IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| RHONDA'E QUIN'LEY, #A0167059, | ) ) ) | CIV. NO. 16-00550 SOM/KSC |
| Plaintiff, | ) ) ) | ORDER DISMISSING COMPLAINT AND DENYING MOTION FOR COUNSEL |
| vs. | ) ) | |
| WANDA CRAIG, ALTRES STAFFING MEDICAL SERVICES, DEP'T OF PUBLIC SAFETY, | ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

## ORDER DISMISSING COMPLAINT AND
## DENYING MOTION FOR COUNSEL

Before the court is pro se Plaintiff Rhonda'e

Quin'Ley's prisoner civil rights Complaint brought

pursuant to 42 U.S.C. § 1983, and Motion for Counsel.

ECF Nos. 1, 9.  Plaintiff names as Defendants the

Hawaii Department of Public Safety ("DPS"), the Kulani

Correctional Facility ("KCF") Acting Warden Wanda Craig

(in her individual capacity), and unidentified Altres

Staffing Medical Services ("Altres") personnel who are

employed at the Halawa Correctional Facility ("HCF")[1]
(in their individual capacities).  Plaintiff alleges
that Defendants violated his rights under the First,
Fifth, Eighth, and Fourteenth Amendments.

This court DISMISSES the Complaint for failure to
state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and
1915A(b).  Plaintiff is granted leave to correct the
deficiencies in his pleading as detailed below.
Plaintiff's Motion for Counsel is DENIED without
prejudice.

## I.  <u>SCREENING</u>

The court must screen all civil actions brought by
prisoners challenging prison conditions or seeking
redress from a governmental entity, officer, or
employee.  28 U.S.C. § 1915A(a).  Complaints or claims
that are frivolous, malicious, fail to state a claim on
which relief may be granted, or seek relief from a

---

[1] For the purposes of the present Order, this court assumes
without deciding that nurses employed by a private company, such
as Altres, who provide medical services to inmates pursuant to a
contract with a state or municipality, are acting under color of
state law and subject to suit under § 1983.  *See West v. Atkins*,
487 U.S. 42, 53-54 (1988).

defendant who is immune from suit must be dismissed. 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(b); 42 U.S.C. § 1997e (c)(1).

A complaint that lacks a cognizable legal theory or alleges insufficient facts under a cognizable legal theory fails to state a claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This does not mean the pleading must include detailed factual allegations, but the pleading must have "more than an unadorned, the-defendant- unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* That is, a pleading suffices "when the

3

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The court must construe a pro se pleading liberally to determine if it states a claim and, prior to dismissal, explain the deficiencies in the complaint and give the pro se plaintiff an opportunity to cure them if the complaint's defects can be corrected. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc); *see also Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (stating that courts must continue to construe pro se filings liberally even when evaluating them under standard announced in *Iqbal*); *but cf. Sylvia Landfield Trust v. City of L.A.*, 729 F.3d 1189, 1196 (9th Cir. 2013) (holding dismissal with prejudice proper when "it is clear that the complaint could not be saved by any amendment").

//

//

//

//

4

## II.   **BACKGROUND**[2]

In late July or early August 2016, KCF prison officials ordered Plaintiff to take a urinalysis test while he was working outdoors.  Plaintiff is in his sixties, has several chronic medical conditions, and says he was drinking large amounts of water to stay hydrated to prevent a stroke or heart attack while working in the heat.  Plaintiff's urinalysis tested negative for drugs, but showed a "low-creatinine level."  Compl., ECF No. 1, PageID #5.  Plaintiff says that Warden Craig and the urinalysis officer told him that drinking "enough water to stay properly hydrated" could result in low creatinine levels, and that a low creatinine level is sufficient to charge an inmate with tampering with the test.  *Id.*, PageID 35-6.  Plaintiff claims this is Warden Craig's "own personal policy," meant "to punish the innocent with the guilty."[3]  *Id.*

---

[2] These facts are taken from the Complaint or publicly available documents referenced in the Complaint and accepted as true for the purposes of this Order.

[3] The DPS Policy and Procedures Manual ("PPM") defines "Diluted urine" as any urine sample without sufficient creatinine and states, "Urinary creatinine determination is also an

Plaintiff was charged with tampering with the test and transferred to the KCF segregation unit.

Plaintiff says he has a medical memorandum allowing him to keep Excedrin on his person to address the severe pain that he often experiences late at night from his chronic ankle and eye conditions.  He says KCF officials took his Excedrin away for his first two days in segregation, and thereafter the KCF nurses provided it only on request.  Plaintiff says he was unable to request the medication when he most required it, however, because Warden Craig has a personal policy of removing guards stationed outside of the segregation unit from "late at night" until breakfast at 4:30 a.m. *Id.*, PageID #6.  Guards are posted within the same building at all times, but it is unclear whether a prisoner in the segregation unit can always reach them.

Plaintiff alleges that Warden Craig directed guards to take his personal property when he was moved to

---

important parameter for evaluating the validity of a urine specimen for drugs abuse detection."  *See* DPS PPM COR.08.10.3.7, http://dps.hawaii.gov/policies-and-procedures/pp-cor. (effective 10/13/2016).

segregation and later transferred to HCF, including his
medication, legal papers, hygiene items, and medical
shoes. He says he was also denied "legal calls" while
in KCF segregation. *Id.*, PageID #7.

Plaintiff says his transfer from KCF to HCF
occurred on or about August 11, 2016.[4] Plaintiff
alleges that HCF Altres medical staff denied him *any*
pain medication for his first two weeks at HCF,
apparently while his personal effects were being sent
from KCF. *Id.*

Finally, Plaintiff says he was told that he could
pay $23.00 to have a second urinalysis performed, and
that he would only be charged if the test returned
"positive for drugs." *Id.*, PageId #9. Plaintiff says
he was charged $46.00 for the second test, which was
not "positive for drugs," although he had not agreed to
pay more than $23.00.

---

[4] Plaintiff's prison account, submitted with his in forma
pauperis application, appears to show that he transferred from
KCF to the Hawaii Community Correctional Center ("HCCC") on or
about August 13, 2016, and transferred to HCF on or about August
17, 2016. *See* ECF No. 7, PageID #31.

Plaintiff seeks an order directing the DPS to stop
considering prisoners' low-creatinine urinalysis
results as proof of tampering, and compensatory
damages.

### III.   DISCUSSION

"To sustain an action under section 1983, a
plaintiff must show '(1) that the conduct complained of
was committed by a person acting under color of state
law; and (2) that the conduct deprived the plaintiff of
a federal constitutional or statutory right.'" *Hydrick
v. Hunter*, 500 F.3d 978, 987 (9th Cir. 2007) (citation
omitted), *vacated and remanded on other grounds*, 556
U.S. 1256 (2009); *see also West v. Atkins*, 487 U.S. 42,
48 (1988); 42 U.S.C. § 1983.

Section 1983 also requires a connection between a
defendant's actions and a plaintiff's allegations. *See
Monell v. Dep't of Soc. Serv.*, 436 U.S. 658 (1978);
*Rizzo v. Goode*, 423 U.S. 362 (1976). "A person
'subjects' another to the deprivation of a
constitutional right, within the meaning of section
1983, if he does an affirmative act, participates in

8

another's affirmative acts, or omits to perform an act
which he is legally required to do that causes the
deprivation of which complaint is made." *Johnson v.
Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

## A.   Eleventh Amendment Immunity

DPS is not a "person" subject to suit under § 1983.
*Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001)
(citing *Hale v. Arizona*, 993 F.2d 1387, 1398-99 (9th
Cir. 1993) (holding that state department of
corrections is arm of state, not "person" within
meaning of § 1983)).

Further, "the Eleventh Amendment bars suits for
money damages in federal court against a state, its
agencies, and state officials acting in their official
capacities." *Aholelei v. Dep't of Pub. Safety*, 488
F.3d 1144, 1147 (9th Cir. 2007). *See Alabama v. Pugh*,
438 U.S. 781, 782 (1978) (per curiam) ("There can be no
doubt . . . that [a] suit against the State and its
Board of Corrections is barred by the Eleventh
Amendment, unless [the State] has consented to the

filing of such a suit."); *Brown v. Cal. Dep't of Corr.*, 554 F.3d 747, 752 (9th Cir. 2009) (same).

Plaintiff's claims against DPS are DISMISSED with prejudice.  *See* 28 U.S.C. §§ 1915(e)(2), 1915A(b). Plaintiff may, however, amend the Complaint not only to continue to name Warden Smith in her individual capacity, but also to add her in her official capacity to preserve his claims for prospective injunctive relief, subject to the limitations discussed below. *See Agua Caliente Band of Cahuilla Indians v. Hardin*, 223 F .3d 1041, 1045 (9th Cir. 2000) (recognizing exception to Eleventh Amendment immunity "for prospective declaratory and injunctive relief against state officers, sued in their official capacities, to enjoin an alleged ongoing violation of federal law").

**B.   First Amendment Claims**

Plaintiff broadly alleges that Warden Craig violated the First Amendment when she allegedly directed guards to confiscate his "legal papers" and grievances and denied him "legal calls" in KCF segregation.  *See* Compl., ECF No. 1, PageID #8.

Plaintiff has a constitutional right of access to the courts, and prison officials may not interfere with his right to litigate or seek redress of grievances. *See Silva v. Vittorio*, 658 F.3d 1090, 1101-02 (9th Cir. 2011).  To state a claim of denial of access to the courts, Plaintiff must allege that he suffered an actual injury to that right.  This means Plaintiff must allege that he was prejudiced with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a nonfrivolous claim.  *Lewis v. Casey*, 518 U.S. 343, 349 (1996).

Plaintiff does not explain how Warden Craig interfered with his active or contemplated litigation. He states that he has brought only one other suit as a prisoner, which was settled in 2005.[5]  Plaintiff was able to commence the present action within two months after he was transferred from KCF.  Moreover, Plaintiff neither explains what he means by "legal calls," nor

---

[5] *See Quin'ley v. Corr. Corp. of Am.*, 2:05-cv-00190 (N.D. Miss. 2005).

11

alleges that he was denied constitutionally required
contact with his attorney in a criminal proceeding
while he was confined at KCF.  Nor does Plaintiff
explain how the alleged denial of "legal calls"
prevented him from otherwise communicating with
individuals outside of the prison.  To the contrary,
Plaintiff asserts that he contacted the American Civil
Liberties Union and the Office of the Ombudsman
regarding his claims.  Plaintiff alleges nothing as to
how Warden Craig's actions impaired his ability to
raise his present claims in court.

Finally, although Plaintiff says he was unable to
complete his grievances while he was still at KCF
because of his transfer to HCF,[6] he states that, because
KCF officials failed to respond to "3 of the 3
grievances I wrote," they defaulted and these
grievances are exhausted.  Compl., ECF No. 1, PageID

---

[6] Extensions of time to submit a grievance are allowed if an
inmate is in transit between facilities and separated from
necessary documents.  *See* DPS PPM COR.12.03.8.2, avail. at:
http://dps.hawaii.gov.

#8.  This indicates that Plaintiff grieved his KCF

claims to conclusion.[7]

These facts undercut Plaintiff's allegation that

Warden Craig hampered his ability to litigate his

claims in this action or in another unidentified

action.  Because the court cannot plausibly infer that

Warden Craig interfered with Plaintiff's right of

access to the court, Plaintiff's First Amendment claims

are DISMISSED with leave granted to Plaintiff to submit

an amended complaint.

## C.  Due Process Claims

Apparently asserting a due process violation,

Plaintiff broadly alleges that Defendants "perhaps even

[violated the] 5th and 14th Amendments."  Compl., ECF

No. 1, PageID #5.

The Due Process Clause protects prisoners from

being deprived of liberty or property without due

process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556

---

[7] If a prison official fails to respond to a grievance
within forty working days, the grievance is considered exhausted
at that level.  *See* DPS PPM, COR.12.03.10.8, avail. at:
http://dps.hawaii.gov.

(1974).  To state a violation of due process, a plaintiff must first establish the existence of a liberty or property interest for which the protection is sought, and if no protected interest is at stake, no process is required.  *See, e.g.*, *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 459-60 (1989); *Meachum v. Fano*, 427 U.S. 215, 223-24 (1976); *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th Cir. 2002).

Liberty interests may arise from the Due Process Clause itself or from state law.  *Wilkinson*, 545 U.S. 209 at 222-24; *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995) ("States may under certain circumstances create liberty interests which are protected by the Due Process Clause.").

While a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations, the touchstone of the inquiry into the existence of a protected, state-created liberty interest depends on the nature of those conditions themselves in relation to the ordinary incidents of

14

prison life.  *Wilkinson*, 545 U.S. at 222-23 (citing
*Sandin*, 515 U.S. at 484); *Brown v. Or. Dep't of Corr.*,
751 F.3d 983, 987 (9th Cir. 2014).  Only conditions
that impose "atypical and significant hardship . . . in
relation to the ordinary incidents of prison life" give
rise to a protected state-created liberty interest.
*Sandin*, 515 U.S. at 484; *Brown*, 751 F.3d at 987.

First, the Due Process Clause of the Fifth
Amendment applies only to the federal government.
*Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir.
2008).  To the extent Plaintiff cites the Fifth
Amendment in relation to his due process claims against
state officials, he cannot state a claim.  This defect
cannot be cured through an amended Complaint, and
Plaintiff's Fifth Amendment claim is DISMISSED with
prejudice.

Second, if the challenged prison practice or
sanction is "within the normal limits or range of
custody which the conviction has authorized the State
to impose," there is no direct liberty interest under
the Constitution.  *Meachum*, 427 U.S. at 225.

Third, prisoners have no direct liberty interest in freedom from transfer to another state, prison, unit, or cell. *See Olim v. Wakinekona*, 461 U.S. 238, 244-45 (1983). If Plaintiff alleges that his transfer from KCT to HCF violated due process, and this is unclear, he fails to state a claim. Similarly, if Plaintiff alleges his confinement in KCF segregated housing, in and of itself, violated due process, he fails to state a claim. *See Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003); *Hewitt v. Helms*, 459 U.S. 460, 466-68 (holding that Due Process Clause does not confer liberty interest in being confined in general prison population rather than administrative segregation). For such confinement to trigger due process protections, it must impose atypical and significant hardship on the prisoner.

Fourth, to the extent Plaintiff contests the fundamental fairness of Warden Craig's "personal" policy or a DPS policy that unequivocally equates lowered creatinine levels with tampering, regardless of an inmate's explanation or special circumstances, he

16

fails to provide enough details regarding the incident
to state a claim.  That is, Plaintiff fails to allege
any facts showing that his disciplinary charge for
tampering with his urinalysis, which resulted in his
confinement in segregation at KCF and his later
transfer to HCF, imposed atypical or significant
hardships on him in comparison to the ordinary
incidents of prison life in administrative segregation
or in the general population at either prison.[8]

Further, even if Plaintiff alleges that he
experienced atypical and significant hardship due to an
allegedly incorrect tampering charge, he fails to
allege what process he was allegedly denied.  Prior to
administrative segregation, prison officials must

_____

[8] It is not clear whether, apart from claiming a denial of
liberty, Plaintiff is alleging a violation of any property
interest relating to the transfer.  He does not say that his
possessions were withheld atypically or longer than usual.
Plaintiff's allegations that he was denied any pain medication
for two weeks at HCF are reviewed under the Eighth Amendment.
*See Albright v. Oliver*, 510 U.S. 266, 273 (1994) (stating, when
specific Amendment "provides an explicit textual source of
constitutional protection . . . that Amendment, not the more
generalized notion of 'substantive due process,' must be the
guide for analyzing these claims") (quoting *Graham v. Connor*, 490
U.S. 386, 395 (1989)); *Patel v. Penman*, 103 F.3d 868, 874 (9th
Cir. 1996).

17

provide minimal due process to an inmate, including
holding an informal nonadversarial hearing within a
reasonable time after segregation, notice of the
charges or reasons segregation is being considered, and
an opportunity for the inmate to present his views.
*Toussaint v. McCarthy*, 801 F.2d 1080, 1100 (9th Cir.
1986), *overruled on other grounds by Sandin*, 515 U.S.
472.  Plaintiff admits that he discussed the incident
with Warden Craig before he was transferred to HCF,
when she explained why he had been charged with
tampering and allegedly told him "she was going to
punish the innocent with the guilty - it was her own
personal policy."  Compl., ECF No. 1, PageID #5.  It
also appears that Plaintiff was able to contest the
charges via grievances before his transfer.

Finally, to the extent Plaintiff alleges that DPS
officials violated a DPS policy stating that an inmate
will be charged for a confirming drug test *only* if it
is positive for drugs, he fails to state a claim.  He
alleges that he was charged twice for a negative drug
test, but the unauthorized deprivation of property by a

18

prison official, whether intentional or negligent, does not state a claim under § 1983 if the state provides an adequate post-deprivation remedy.  *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  Hawaii law provides such an adequate post-deprivation remedy.  *See* Haw. Rev. Stat. § 662-2; *cf. Barnett v. Centoni*, 31 F.3d 813, 816–17 (9th Cir. 1994) (per curiam) (analyzing prisoner's due process claim under California's tort statutes).  Only an intentional *and* authorized deprivation of property constitutes an actionable § 1983 claim under the Due Process Clause.[9]  Plaintiff has a state law remedy for this allegedly unauthorized charge.

Plaintiff's due process claims as alleged under the Fourteenth Amendment are DISMISSED with leave to amend.

**D.   Eighth Amendment Claims**

The Eighth Amendment protects prisoners from inhumane conditions of confinement.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  A claim of inhumane

---

[9] An authorized deprivation is one carried out pursuant to established state procedures, regulations, or statutes.  *Piatt v. McDougall*, 773 F.2d 1032, 1036 (9th Cir. 1985).

conditions of confinement has both an objective and a subjective component. *See id.* at 834. "First, the deprivation alleged must be . . . sufficiently serious" and must "result in the denial of the minimal civilized measure of life's necessities." *Id.* "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

Second, the prison official must have acted with "deliberate indifference" to a substantial risk of serious harm to the inmate. *Farmer*, 511 U.S. at 834. "Mere negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Rather, a plaintiff must set forth facts to show that a defendant knew of, but disregarded, an excessive risk to inmate safety. *Farmer*, 511 U.S. at 837. That is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

### 1.  *Warden Craig*

Plaintiff claims Warden Craig was deliberately indifferent to his health when she (1) told him that drinking "enough water to stay properly hydrated" might alter his creatinine levels and indicate that he was attempting to tamper with his urinalysis; and (2) failed to post guards directly outside of the KCF segregation unit from "late at night" until 4:30 in the morning, preventing Plaintiff from requesting Excedrin during that period.  Compl., ECF No. 1, PageID #5-6.

First, Warden Craig's explanation of DPS policy regarding low creatinine levels in inmate drug tests did not deprive Plaintiff of water, exacerbate his chronic medical conditions, or put his life in danger.

Second, Plaintiff fails to allege sufficient facts to show that Warden Craig's policy of posting guards in the same building as the KCF segregation unit but not requiring them to remain directly outside the segregation unit from "late at night" until 4:30 a.m., violated the Eighth Amendment by denying him access to Excedrin for several hours.

To state a delay or denial of medical care claim, a plaintiff must show that the defendant acted with "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. *Jett*, 439 F.3d at 1096. Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by the way prison medical personnel respond to a prisoner's medical needs. *Estelle*, 429 U.S. at 104-05; *Jett*, 439 F.3d at 1096.

The court accepts for the purposes of this Order that Plaintiff's chronic eye and ankle ailments constitute objectively serious medical conditions. Plaintiff nonetheless fails to allege facts showing that Warden Craig was aware of and acted with

22

deliberate indifference to Plaintiff's medical conditions when she failed to assign a guard to remain directly outside of the KCF segregation area.  That is, Plaintiff appears to be complaining that this was Warden Craig's long-standing scheduling policy, but he does not support that complaint with sufficient factual allegations.

Plaintiff does not explain when and how Warden Craig was alerted to his medical issues and alleged inability to access medically required pain relief.  He fails to define "late at night," indicate how many hours he waited for Excedrin, or how many times this happened.  He does not explain why he was unable to ask for Excedrin before guards left the segregation unit, once he was aware that this was standard procedure. Plaintiff also fails to allege whether guards patroled the segregation unit during the intervening hours, or if he was able to alert guards or anyone else if there was any type of emergency.

Plaintiff's Eighth Amendment claims as alleged against Warden Craig are DISMISSED with leave granted to amend.

### 2.   HCF Altres Medical Services Staff

Plaintiff alleges that, after he transferred to HCF, HCF Altres medical staff nurses "flatly refused [to provide him] 'any' type of pain relief" for two weeks, despite his oral and written requests for medical attention.  Compl., ECF No. 1, PageID #7. While this claim is sufficient to survive the "low threshold" needed to proceed past the sua sponte screening required by 28 U.S.C. §§ 1915(e)(2) and 1915A(b), *see Wilhelm v. Rotman*, 680 F.3d 1113, 1123 (9th Cir. 2012), Plaintiff fails to tie these allegations to any specific individual defendant. That is, Plaintiff fails to assert factual allegations putting any individual HCF Altres medical staff on notice that his or her individual acts or omissions violated Plaintiff's federal rights.  *See Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (explaining that under § 1983, a plaintiff must demonstrate that

24

each defendant personally participated in the
deprivation of his rights) (citing *Iqbal*, 556 U.S. at
676).  Plaintiff fails to detail when he asked for pain
relief, to whom he made these requests, and what any
individual HCF medical worker responded to his
requests.  It is unclear whether Plaintiff was told he
"had to wait" until a medical appointment could be
scheduled, or a doctor could prescribe pain relief, or
if he is complaining that his personal Excedrin did not
arrive with his belongings from KCF for two weeks.

     "As a general rule, the use of 'John Doe' or 'Jane
Doe' to identify a defendant is not favored."
*Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir.
1980).  This is because the United States Marshall
cannot serve an unknown defendant.  While a plaintiff
may refer to unknown defendants as Defendant John Doe
1, John Doe 2, John Doe 3, and so on, he must allege
facts to support how each individual Doe defendant
violated the plaintiff's constitutional rights.  If a
plaintiff provides such details, he may then use the
discovery processes to obtain the names of any Doe

defendants he believes violated his constitutional rights and seek leave to amend his complaint to name those defendants, unless discovery will not uncover the identities, or the complaint would be dismissed on other grounds.  *Wakefield v. Thompson*, 117 F.3d 1160, 1163 (9th Cir. 1999) (further citation omitted).

Plaintiff fails to state a claim against Doe Defendants HCF Altres medical staff, and these claims are DISMISSED without prejudice.

**E.   Improper Joinder**

If Plaintiff decides to amend his claims to comply with the court's directions, he is notified that he must explain why the events he challenges at KCF are directly related to the alleged violations he later experienced at HCF.

Under the Federal Rules of Civil Procedure, a litigant may not raise unrelated claims involving different defendants in a single action.  A basic lawsuit is a single claim against a single defendant. Rule 18 allows a plaintiff to add multiple claims to the lawsuit when those claims are alleged against the

26

same defendant.  Fed. R. Civ. P. 18(a).  Rule 20(a) allows a plaintiff to add multiple parties to a lawsuit when the right to relief arises out of the "same transaction, occurrence, or series of transactions or occurrences."  Fed. R. Civ. P. 20(a)(2)(A).

Unrelated claims that involve different defendants must be brought in separate lawsuits.  *See Owens v. Hinsley*, 653 F.3d 950, 952 (7th Cir. 2011); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *Coughlin v. Rogers*, 130 F.3d 1348, 1350-51 (9th Cir. 1997); *Washington v. Cal. Dep't of Corr.*, 2016 WL 6599812, at *1 (E.D. Cal. Nov. 7, 2016); *Tagle v. Nev. Dep't of Corr.*, 2016 WL 910174, at *2 (D. Nev. March 9, 2016). Requiring litigants to raise discrete and unrelated claims against different parties in separate lawsuits prevents confusion of the issues and parties that often arises from such shotgun lawsuits.  It also ensures that prisoners pay the required filing fees for their lawsuits and prevents them from circumventing the three-strikes rule set forth under the Prison Litigation Reform Act ("PLRA").  *See George*, 507 F.3d

27

at 607; *see also* 28 U.S.C. § 1915(g) (setting forth three-strikes rule).  The court may sever misjoined parties as long as no substantial right is prejudiced by severance.  *Coughlin*, 130 F.3d at 1350.

Although KCF Warden Craig and the HCF Altres medical staff are both employed at DPS facilities, their discrete acts are alleged to have occurred in two different DPS facilities and at different times, and are not alleged to have been taken pursuant to DPS policy.  These claims as written appear too attenuated to be considered the same transaction and occurrence.

## IV.  LEAVE TO AMEND

The Complaint is DISMISSED for failure to state a claim.  28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(b); 42 U.S.C. § 1997e (c)(1).  Plaintiff may file an amended complaint on or before January 19, 2017, that cures the deficiencies noted in this Order.  The amended pleading must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii.

An amended complaint generally supersedes the original complaint. *See Ramirez v. Cty. of San Bernadino*, 806 F.3d 1002, 1008 (9th Cir. 2015). The court will not refer to the original pleading to make an amended complaint complete, although it will not ignore contradictory statements of fact between an original and amended complaint. Local Rule 10.3 further requires that an amended complaint be complete in itself without reference to any prior pleading. Defendants not named in the caption and claims dismissed without prejudice that are not realleged in an amended complaint may be deemed voluntarily dismissed. *See Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012) ("[C]laims dismissed with prejudice [need not] be repled in a[n] amended complaint to preserve them for appeal. . . . [but] claims [that are] voluntarily dismissed [are] . . . waived if not repled."). In an amended complaint, each claim and the involvement of each Defendant must be sufficiently alleged.

## V.  <u>28 U.S.C. § 1915(g)</u>

Plaintiff is notified that under 28 U.S.C.
§ 1915(g), a prisoner may not bring a civil action or
appeal a civil judgment *in forma pauperis* under 28
U.S.C. § 1915

> if the prisoner has, on 3 or more prior
> occasions, while incarcerated or detained in
> any facility, brought an action or appeal in a
> court of the United States that was dismissed
> on the grounds that it is frivolous, malicious,
> or fails to state a claim upon which relief may
> be granted, unless the prisoner is under
> imminent danger of serious physical injury.

28 U.S.C. § 1915(g).  If Plaintiff fails to cure the
noted deficiencies in his Complaint through amendment,
this action will be terminated and may be considered a
strike.

## VI.  <u>CONCLUSION</u>

(1)  The Complaint is DISMISSED for failure to
state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) &
1915A(b)(1).

(2) Plaintiff may file an amended complaint curing
the deficiencies noted above on or before January 19,
2017.

(3) Failure to timely amend and cure the pleading deficiencies noted herein will result in dismissal of this action with prejudice for failure to state a claim, and Plaintiff may incur a strike pursuant to 28 U.S.C. § 1915(g).

(4)  The Clerk of Court is DIRECTED to mail Plaintiff a prisoner civil rights complaint form to assist him in complying with the directions in this Order.

(5) Plaintiff's Motion for Counsel is DENIED without prejudice to refiling after he complies with the directions in this Order and files a satisfactory amended complaint.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, December 19, 2016.



   /s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge


*Quin'Ley v. Craig*, 1:16-cv-00550 SOM/KSC; Scrn 2016 Quinley 16-550 som (dsm lv amd dny mapptcoun)